UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KANDISE SCHNOOR,

       Plaintiff,

v.                                    Case No. 1:12-CV-675

WALGREEN INCOME PROTECTION         HON. GORDON J. QUIST
PLAN  FOR PHARMACISTS AND
REGISTERED NURSES,

       Defendant.

_____/

## OPINION

     Plaintiff, Kandise Schnoor, sued Defendant, Walgreen Income Protection Plan for

Pharmacists and Registered Nurses, under the Employee Retirement Income Security Act of 1974

(ERISA), 29 U.S.C. § 1001 *et seq*., alleging that Defendant improperly denied her short-term and

long-term disability benefits.   The parties have filed cross motions for judgment on the

administrative record (docket nos. 18 & 19).[1]   After review of the administrative record, for the

reasons set forth below, the Court will grant Schnoor's motion for short-term and long-term

disability benefits.

## I. FACTS[2]

     Walgreen Co. (Walgreens) sponsors a self-funded employee benefit plan—the Walgreen

Income Protection Plan for Pharmacists and Registered Nurses (Plan)—for eligible employees.

(Docket no. 1, Page ID 46.)  The Plan provides short-term and long-term disability benefits.  (*Id.*

---

[1] The parties have not actually filed motions for judgment on the record, but the Court interprets as motions the parties' briefs in support of judgment on the administrative record.

[2] The following facts are taken from the Administrative Record (AR) (docket nos. 10–17).  All page numbers reflect the Page ID number in the CM/ECF record unless otherwise indicated.

at 44.)  Benefits available during the first 180 days of a disability are defined as short-term benefits, and benefits available after 180 days are long-term benefits.  (*Id.* at 47.)  For purposes of short-term benefits:

> [T]he words 'disabled' or 'disability' mean that, due to sickness, pregnancy or accidental injury, [an employee is] receiving appropriate care and treatment from a doctor on a continuing basis and [an employee is] prevented from performing one or more of the essential duties of [the employee's] Walgreens occupation.

(*Id.*)  For long-term disability benefits,

> 'disabled' or 'disability' means that, due to sickness, pregnancy, or accidental injury, [an employee is] prevented from performing one or more of the essential duties of [the employee's] own occupation and [is] receiving appropriate care and treatment from a doctor on a continuing basis; and for the first 18 months of long-term benefits [an employee is] unable to earn more than 80% of her pre-disability earnings or indexed pre-disability earnings at her own occupation from any employer in [her] local economy; or following that 18-month period, [she is] unable to earn more than 60% of [her] indexed pre-disability earnings from any employer in [her] local economy at any gainful occupation for which [she is] reasonably qualified, taking into account [her] training, education, experience, and pre-disability earnings.

(Docket no. 10, Page ID 47.)  The Plan grants to Sedgwick, as claim administrator, the authority to construe and interpret the Plan and make benefit determinations, including claims and appeals determinations as Sedgwick deems "appropriate" in its "sole discretion."  (*See id.* at 58.)  The parties agree that the Plan is governed by ERISA.

Beginning on August 2, 2001, Schnoor worked as a pharmacist for Walgreens.  (*Id.* at 130.)  On April 22, 2011, Schnoor submitted a short-term disability claim.  (*Id.*)  Sedgwick approved one week of short-term disability benefits for April 29, 2011 to May 5, 5011.  (*Id.* at 75.)  Thereafter, Sedgwick denied Schnoor's claim on the basis that Schnoor did not qualify for continuing benefits because she failed to provide "objective medical documentation of clinical findings . . . which would [have] prevent[ed] [her] from performing [her] job functions as of May 6, 2011."  (*Id.* at 1337.)  On October 19, 2011, the Social Security Administration awarded Schnoor Social Security Disability benefits.  (*Id.* at 171–74.)

**A. First Appeal**

On November 16, 2011, Schnoor appealed Sedgwick's denial of short-term disability benefits and submitted a written document supporting her appeal and attached supporting medical records. (*Id.* at 207–56.) Sedgwick retained Insurance Appeals, Ltd. to conduct two "peer reviews" of Schnoor's medical records. (*See id.* at 1204.)  Dr. Siva Ayyar, M.D., conducted the first review. (*Id.* at 1204–10.)  Dr. Ayyar is a board certified specialist in occupational medicine. (*Id.* at 1210.) Dr. Penny Chow, M.D., a board certified psychiatrist, conducted the second review. (*Id.* at 1211–23.)  On or about December 22, 2011, Sedgwick notified Schnoor that it had affirmed the denial of short-term benefits on appeal because Schnoor did not meet the Plan's definition of disability. (*Id.* at 1224–27.)  The denial letter stated that if Schnoor wished to request a second formal appeal, Schnoor could do so by written request for review within 90 days of receipt of the letter. (*Id.* at 1226.)

**B. Second Appeal**

On March 14, 2012, Schnoor submitted a second appeal of Sedgwick's denial of her short-term benefits claim and attached additional, updated medical records. (Docket no. 10, Page ID 178–92.)  Sedgwick retained Reliable Review Services to conduct two additional "peer reviews" of Schnoor's medical records. (Docket no. 15, Page ID 1678–96.)  Dr. Leonard Sonne, M.D., a board certified internist and pulmonary specialist, conducted the first review. (*Id.* at 1678–85.)  Dr. Marcus Goldman, M.D., a board certified psychiatrist, conducted the second review. (*Id.* at 1686–96.)  On the basis of these reviews, Sedgwick again affirmed the denial of Schnoor's disability benefits on May 22, 2012.  Schnoor filed this lawsuit on June 26, 2012, to recover short-term and long-term benefits due to her under the terms of the Plan, pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B).

## II. STANDARD OF REVIEW

The threshold issue is the applicable standard of review.[3]  Generally, in an ERISA case, a court reviews a denial of benefits *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956–57 (1989); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998).  "When the plan administrator has discretionary authority to determine benefits . . . the court reviews a denial of benefits under the 'highly deferential arbitrary and capricious standard of review.'"[4]  *Smith v. Cont'l Casualty Co.*, 450 F.3d 253, 259 (6th Cir. 2006) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996)).  "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *Farhner v. United Transp. Union Discipline Income Protection Program*, 645 F.3d 338, 342 (6th Cir. 2011) (internal quotation marks and citation omitted).  "Therefore, if the Plan Administrator's decision is supported by substantial evidence, then it should be upheld." *Id.*  "In other words, the Plan Administrator's decision should be rational in light of the Plan's provisions." *Id.* (internal quotation marks and alterations omitted).  "[T]he deferential standard of review does not mean courts should "rubber stamp[]" a plan administrator's decision—a court must review the quantity and quality of the medical evidence on each side." *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010).  A decision reviewed under the arbitrary and capricious standard "must be upheld if it results from a 'deliberate principled reasoning process' and is supported by 'substantial evidence.'" *Id.* (quoting

---

[3] The Sixth Circuit has held that summary judgment is inappropriate for reviewing denial of benefit claims under ERISA.  *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998); *see also* ERISA Case Management Order, Docket no. 7, Page ID 34–35.

[4] The parties agree that the correct standard of review in this case is the arbitrary and capricious standard.  The Plan grants discretion to a third-party claim administrator.  (Docket no. 10, Page ID 58.)

4

*Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

"A court may consider only that evidence presented to the plan administrator at the time he or she

determined the employee's eligibility in accordance with the plan's terms.  The court's review is

thus limited to the administrative record."  *Id.*

### III. DISCUSSION

In this case, Schnoor argues that Defendant failed to conduct a deliberate and principled

review of Schnoor's claim, and the medical evidence "strongly preponderates in her favor."  (Pl.'s

Br. for J. on Merits, Docket no. 18, Page ID 2484.)  She argues that because Defendant's only stated

reason for denying her disability claims is that she lacked objective medical evidence to corroborate

her subjective claims of cognitive dysfunction—in addition to Chronic Fatigue Syndrome and

Fibromyalgia—and that Defendant did not adequately consider Schnoor's objective evidence,

Defendant's denial was not supported by substantial evidence, and is therefore arbitrary and

capricious.

### A. First Appeal

In support of her first appeal, Schnoor produced evidence from Dr. Charles Lapp, M.D., a

board certified internist, who has treated Schnoor regularly since 1997.  (Docket no. 15, Page ID

1830.)  Dr. Lapp stated in a letter, and supported with medical treatment notes, that Schnoor has

been diagnosed with Chronic Fatigue Syndrome (CFS) since 1997.  Since 1997, he has documented

in detail her physical decline, including body pain, fatigue from normal daily activities, post-

exertional malaise, cognitive dysfunction, and a sleep disorder.  He has also diagnosed and

documented her fibromyalgia "for many years."  (*Id.*; *see also* Docket no. 10 at 207–52.)  He also

stated that "exclusionary laboratory studies . . . have confirmed [Schnoor's] CFS and FM, with no

other plausible explanations for her symptoms."  (*Id.*)  He explained the results of those laboratory

5

studies in the record.  (*Id.* at 1831.)  On the basis of his treatment notes from 1997 to 2011, physical

examinations, personal interviews, and laboratory studies, Dr. Lapp concluded that Schnoor was,

> markedly impaired by weakness and exhaustion after minimal every day activity; post-exertional malaise that prostrates her for days; muscle and joint pain that affects mobility, mood, concentration and sleep; balance problems that limit climbing, standing, and ambulation; recurrent headaches that interfere with concentration and dealing with others; persistent diarrhea with fecal incontinence that requires proximity to home or a commode; sleep disruption that prevents her from keeping normal work hours and leads to excessive daytime somnolence; and significant confusion and neurocognitive dysfunction including problems with recall, attention, reaction time, cognitive flexibility, planning and organizing, and calculation.  Due to cognitive difficulties she is a danger to others in her current job, and at her current low level of functioning she is unable to maintain even sedentary activities on a regular, predictable or sustained basis.

> Based on epidemiological data and my extensive experience with similar patients, it is medically certain that Ms. Schnoor will not improve significantly in 12 months, and possibly never.

(*Id.* at 1831.)

Schnoor also introduced evidence from Dr. Martin Wunsch, Ph.D., a licensed psychologist,

to corroborate Schnoor's subjective complaints of cognitive dysfunction.[5]  Dr. Wunsch prepared a

"Neuropsychological Evaluation" report dated October 22, 2011.  (Docket no. 13, Page ID 1052.)

As a part of his analysis, Dr. Wunsch reviewed records, including three Walgreens performance

reviews of Schnoor dated February 2010, July 2010, and April 2011, and prior neurological testing

by Dr. Deborah A. Rich, Ph.D., a neuropsychologist (December 2010).  (*Id.* at 1055–56).  Dr.

Wunsch also conducted in-person interviews of Schnoor, reviewed her subjective reports of her

symptoms, and conducted a series of neuropsychological tests of Schnoor's motor functioning,

executive functioning, verbal processing, visual-spatial processing, and memory.  (*Id.* at 1064–56.)

Dr. Wunsch concluded as follows:

---

[5] In her appeals, Schnoor also submitted various medical records and treatment notes from other doctors.  (*See, e.g.*, Docket no. 10, Page ID 207–56.)

6

- Schnoor self-reported severe cognitive dysfunction, including "poor attention and concentration, poor recent and remote memories, reading and spelling are alright but math is impaired, word finding difficult at times, sense of direction is disrupted, losing things and disorganization is also present."
- On the basis of "formal validity tests" and observation, Schnoor reported her symptoms reliably; she was "not prone to exaggeration, somatization, dissimulation, or malingering."
- Schnoor has "very superior" range general intelligence but "where Working Memory must be sustained, where Executive Functions are tapped, and where Processing Speed is measured over lengthier periods of time, [Schnoor's] performance falls off into the Average range, a notable drop" for Schnoor.
- Differences between Schnoor's self-reporting of severe cognitive dysfunction and "average" level cognitive dysfunction is explained by the formal testing context, which demonstrates "optimal performance."  In daily life, cognitive results will fall below "optimal performance."
- The CAARS (Conners' Adult ADHD Rating Scales) test (a self-reporting methodology) revealed "substantial elevations" in the 99th percentile for problems related to inattention/memory and DSM-IV Inattentive Symptoms.  Schnoor, as well as her daughter and son, participated in CAARS testing regarding Schnoor's behavior.
- Read conjunctively with the neurological testing results showing a notable drop in performance, the CAARS results are the best indicator of Schnoor's cognitive dysfunction.
- "Conclusively, it is the fatigue and probably pain involved in CFS and FM that have compromised [Schnoor's] professional performance and are reflected in the CAARS results."
- Schnoor "is compromised substantially in medical and cognitive arenas, is not able to reliably and effectively manage professional work as a Pharmacist, any work in general and is compromised in managing every day life activities."
- Schnoor is diagnosed with Cognitive Disorder Not Otherwise Specified (DSM-IV 294.9) and Adjustment Disorder Not Otherwise Specified (DSM-IV 309.9).

(*Id.* at 1053–67.)

The Diagnostic and Statistical Manual of Mental Disorders IV, which was in effect when Schnoor's examination occurred, defines "Cognitive Disorder Not Otherwise Specified" (DSM-IV 294.9) as a disorder characterized by cognitive dysfunction presumed to be due to the direct physiological effect of a general medical condition that does not meet criteria for any of the specific deliriums, dementias, or amnestic disorders defined in the DSM-IV.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. Text Revision, 2000).  The definition cross-references as an example "Mild

Neurocognitive Disorder," which is defined by cognitive deficits that "must be corroborated by the results of neuropsychological testing or bedside standardized cognitive assessment techniques." *Id.* at Appendix B, 762. The cognitive deficits cause marked distress or interfere with the individual's social, occupational, or other important areas of functioning and represent a decline from a previous level of functioning but does not meet the definition of a delirium, dementia or amnestic disorder and is not better accounted for by another mental disorder. *Id.* The DSM-IV defines "Adjustment Disorder Not Otherwise Specified" (DSM-IV 309.9) as a subtype of adjustment disorder to describe "maladaptive reactions" (such as physical complaints, social withdrawal, or work or academic inhibition) to stressors that are not classifiable as other specific types of adjustment disorder (such as anxiety or depressed mood adjustment disorders). *Id.* at 679–80. The essential feature of an adjustment disorder is a psychological response to an identifiable stressor or stressors in the development of a clinically significant emotional or behavioral symptom. *Id.* at 679. The clinical significance of the reaction is indicated either by marked distress that is in excess of what would be expected given the nature of the stressor or by significant impairment in social or occupational functioning. *Id.*

In support of her appeal, Schnoor also submitted a pharmacist assessment card dated April 19, 2011. (Docket no. 10, Page ID 170.) According to the card, it is a quality assurance tracking document for pharmacists. (*Id.*) The card indicates that Schnoor had made at least 14 errors during the review period of 6-9 months, (*id.* at 1118), including three events involving incorrect strength of medication, six events involving the incorrect drug, four events involving the incorrect patient, and one involving incorrect directions. (*Id.*)

Sedgwick denied Schnoor's first appeal on the grounds that Schnoor did not satisfy the Plan's definition of disability for her short-term disability claim. Sedgwick's determination relied on the record reviews conducted by Doctors Ayyar and Chow. According to the December 22, 2011 denial letter, Dr.

8

Ayyar concluded that there was "no medical basis for disability from an Occupational Medicine perspective" because Schnoor's "subjective complaints of chronic fatigue and difficulty concentrating were not the result of a specific diagnosis or medical issue." (Docket no. 12, Page ID 1226; *see also* Ayyar Report, Docket no. 13, Page ID 1189.) Dr. Ayyar also observed that Schnoor lacked "objectively verifiable, reproducible, bona fide neurological deficits." (Docket no. 13, Page ID 1189.)  Dr. Chow similarly concluded that "[f]rom a psychiatric perspective, the clinical findings provided for review do not support Ms. Schnoor's inability to perform her regular unrestricted job." (*Id.* at 1225; *see also* Chow Report, *id.* at 1203.)  While noting that Dr. Wunsch diagnosed Schnoor with a cognitive disorder, Chow nonetheless concluded that the "only in-depth psychological evaluation provided for review was from 10/22/11, and did not report any significant objective cognitive deficits that would support the claimant's subjective symptoms of poor attention and concentration, poor recent and remote memory, impaired math skills, disruption of sense of direction and disorganization." (*Id.* at 1203.)  Thus, Chow concluded that Schnoor was not disabled. (*Id.*)

Sedgwick's denial of Schnoor's first appeal fails under even an arbitrary and capricious review standard because Sedgwick has failed to support its decision with substantial evidence when viewed in light of the quantity and quality of medical evidence on each side. *See Schwalm*, 626 F.3d at 308.  In this case, it cannot be said that Sedgwick's decision resulted from "a deliberate principled reasoning process." *Id.* (quoting *Baker*, 929 F.2d at 1144).

First, Dr. Ayyar's conclusion that Schnoor is not disabled is not supported by substantial evidence. Dr. Ayyar's review dismisses Schnoor's cognitive and other physical ailments in the matter of a few short sentences.  Regarding Schnoor's complaints of cognitive dysfunction, Dr. Ayyar concludes that they are "not the result of a specific diagnosis or medical issue" because Schnoor "has no objectively verifiable, reproducible, bona fide neurological deficits," and concludes that any "issues"—which he summarizes as

9

"chronic fatigue, difficulty concentrating, etc."—"could very well be a function of family difficulties or socioeconomic issues" rather than a medical condition.  Dr. Ayyar does not attempt to refute, discredit, or otherwise explain his difference in opinion from Dr. Wunsch regarding Schnoor's documented reduction in cognitive function during formal neurological testing, nor Dr. Wunsch's conclusions —based on in-person interviews and formal validity testing—that Schnoor's self-reports were genuine and Schnoor's children's CAARS results corroborated Schnoor's self-reports.  In essence, Dr. Ayyar discredits both Schnoor's subjective complaints (thoroughly documented in the record by Dr. Lapp) and Dr. Wunsch's objective documentation and medical opinion without any explanation.  Although he acknowledges some objective evidence of Schnoor's cognitive dysfunction—the Walgreens performance assessment card—he *speculates* that the reason for her errors is attributable to family and socioeconomic stress, not medical illness.  This conclusion is a direct contradiction of Dr. Wunsch's conclusion that "conclusively, it is the fatigue and probably pain involved in CFS and FM that have compromised [Schnoor's] professional performance and are reflected in the CAARS results."  (*Id.* at 1066).  It also contradicts Dr. Wunsch's diagnosis that Schnoor has Cognitive Disorder Not Otherwise Specified (DSM-IV 294.9).  Nonetheless, Dr. Ayyar does not offer any explanation as to why Schnoor's "subjective complaints" are not the result of a "specific diagnosis or medical issue."

Regarding Dr. Ayyar's evaluation of Schnoor's CFS and FM, Dr. Ayyar similarly and summarily dismisses her symptoms in the course of two sentences.  He states that a cardiologist, Dr. Castillo, administered a stress test and Holter monitor study with normal results.  However, this analysis fails to account for the central medical disability complained of by Schnoor—CFS and FM.  As described by Dr. Lapp in a follow-up letter submitted for a second appeal, Schnoor's impairments are

> not due to a heart condition but weakness and exhaustion after minimal every day activity; post-exertional malaise that prostrates her for days; muscle and joint pain that affects mobility; mood, concentration, and sleep; balance problems that limit climbing, standing, and ambulation; recurrent headaches that interfere with concentration and dealing with

others; persistent diarrhea with fecal incontinence that requires proximity to home or a
commodate; sleep disruption that prevents her from keeping normal work hours and lends
to excessive daytime somnolence; and significant confusion and neurological dysfunction
including problems with recall, attention, reaction time, cognitive flexibility, planning and
organizing, and calculation.

(*Id.* at 806.)  Combined, Dr. Lapp opined that those documented low levels of functioning made Schnoor "a danger to others" in her role as a pharmacist.  (*See, e.g.*, id. at 806.)  Dr. Ayyar does not refute this or otherwise address Dr. Lapp's extensive office notes or treatment notes documenting Schnoor's physical symptoms.

That Dr. Ayyar did not interview or examine Schnoor weighs in Schnoor's favor.  "Whether a doctor has physically examined the claimant is indeed one factor that we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician."  *Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005) (citing *Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 295 (6th Cir. 2005)); *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 1972 (2003) ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.").[6]  Where, as here, the plan administrator does not offer a reasoned explanation for giving greater weight to the consulting physician, that the consulting physician does not examine the claimant and rejects as incredible the claimant's self-reported symptoms weighs heavily in favor of a finding that the administrator acted arbitrarily.  *Cf. Kalish*, 419 F.3d at 508.

Second, Dr. Chow's conclusion that Schnoor is not disabled is not supported by substantial evidence.  Dr. Chow's review was limited to Schnoor's purported cognitive dysfunction, not her CFS or FM.  (*See id.*

---

[6]Many courts have expressed skepticism about claim denials in psychological disability cases that rely solely on paper reviews because the reviewing doctors have not spent time with the claimant.  *See, e.g.*, *Smith v. Bayer Corp. Long Term Disability Plan*, 444 F. Supp. 2d 856, 873–74 (E.D. Tenn. 2006), *affirmed in part and vacated in part by Smith v. Bayer Corp. Long Term Disability Plan*, 275 F. App'x 495 (6th Cir. 2008); *Westphal v. Eastman Kodak Co.*, No. 05-CV-6120, 2006 WL 1720380, at *4 (W.D.N.Y. June 21, 2006); *Sheehan v. Metro Life Ins. Co.*, 368 F. Supp. 2d 228, 255 (S.D.N.Y. 2005).

at 1203.)  Dr. Chow's proffered rationale for concluding that Schnoor was not disabled is stated in one sentence:  "The only in-depth psychological evaluation provided for review was from 10/22/11, and did not report any significant objective cognitive deficits that would support the claimant's subjective symptoms of poor attention and concentration, poor recent and remote memory, impaired math skills, disruption of sense of direction and disorganization."  (*Id.*)  Dr. Chow then concluded that because there "are no other in-depth psychological evaluations," Schnoor was not disabled.  Dr. Chow does not comment on Schnoor's CFS or FM.

Similar to Dr. Ayyar's review, Dr. Chow dismisses Schnoor's subjective reports on the basis that there is no objective, corroborating evidence.  Unlike Dr. Ayyar, Dr. Chow acknowledges Dr. Wunsch's "in-depth psychological evaluation."  (*Id.*)  Nonetheless, Dr. Chow dismisses the evaluation because it did not document what she calls "significant" cognitive deficits.  (*Id.*)  However, Dr. Chow does not offer *any* explanation for her interpretation of the results as insignificant.  She does not attempt to refute, discredit, or otherwise explain her difference of opinion from Dr. Wunsch, who documented "a notable" drop in Schnoor's working memory, executive function and processing speed, which, combined with the demands of work as a pharmacist, corroborate Schnoor's self-reporting and Schnoor's children's CAARS results.  Dr. Chow does not offer any alternative explanation for Schnoor's reported deficits, nor the objectively documented errors  on Schnoor's performance assessment card.  Because Dr. Chow does not offer an explanation for her difference of opinion from Dr. Wunsch, and absent an in-person interview or examination from which to refute Dr. Wunsch's assessment of Schnoor's self-reports and those of her children, neither Dr. Chow's conclusions nor Sedgwick's disability determination is supported by substantial evidence.

That the Social Security Administration awarded Schnoor Social Security Disability benefits also weighs in favor of Schnoor.  A Defendant is not required to "explicitly distinguish a favorable Social

Security determination in every case." *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 446 (6th Cir. 2009). However, where the plan administrator encourages or requires an applicant to apply for Social Security payments, financially benefits from an applicants receipt of payments, and then fails to explain why it took a different position from the Social Security Administration on the question of disability, it weighs in favor of a finding that the benefits determination was arbitrary and capricious. *Id.* In this case, the Plan requires participants to apply for other income benefits for which they are eligible. (Docket no. 10, Page ID 49.) Schnoor's Social Security Disability award was in the record reviewed by Sedgwick, but Sedgwick's review does not mention the award nor distinguish Sedgwick's position. As such, it weighs in favor of Schnoor.

### B. Second Appeal

Schnoor submitted a second appeal of Sedgwick's denial of short-term disability benefits. In support of her second appeal, Schnoor submitted updated medical records. For purposes of this case, the evidence is largely the same. Sedgwick retained Reliable Review Services to conduct reviews of Schnoor's medical records. (*Id.* at 1678–96.) Dr. Sonne, an internist and pulmonary specialist, conducted the first review. Dr. Goldman, a psychiatrist, conducted the second review. (*Id.* at 1686–96.) Citing these reviews, Sedgwick again denied Schnoor's claim on the basis that Schnoor did not satisfy the definition of disabled for purposes of short-term disability benefits. (*Id.* at 1700.)

Dr. Sonne's review was conducted "from an internal medicine perspective," and cross-referenced Dr. Goldman's report for purposes of psychiatric review. (*Id.* at 1683.) Dr. Sonne acknowledged Dr. Lapp's conclusion that Schnoor had "impaired work capacity" on the basis of CFS and FM that could "not be explained by deconditioning alone." (*Id.* at 1682.) Dr. Sonne then stated that he disagreed with Dr. Lapp's conclusion because Schnoor's decreased work capacity was "completely" due to poor fitness ("deconditioning"). Dr. Sonne based this conclusion on the fact that Dr. Lapp had not performed a

13

cardiopulmonary stress test, which is a method by which doctors can test malingering in disability cases. (*Id.*)  Dr. Sonne also noted that Schnoor had had the same complaints of pain, cognitive disability and fatigue since 1997 but continued to work.  (*Id.*)  He also observed that her weight was stable, she was alert, her chest was clear, her heart sounds were normal, she ambulated without an assisted device, and there was no documentation of heart disease or lung disease.  (*Id.*)  On this basis, he concluded that Schnoor was not precluded, from an internal medicine perspective, from doing full-time work as a pharmacist.  (*Id.* at 1683.)

Dr. Sonne's review of Schnoor's physical limitations—which does not address Schnoor's cognitive dysfunction—suffers from the same omissions as Dr. Ayyar.  Dr. Sonne states that he disagrees with Dr. Lapp's conclusion that Schnoor's condition cannot be explained by deconditioning alone by stating that Schnoor's condition is caused by deconditioning alone.  In support of his conclusion, he cites that Schnoor had normal vital signs (presumably on the basis of the record, as Dr. Sonne did not examine Schnoor) and Dr. Lapp never administered a cardiopulmonary stress test which would have better assisted Dr. Sonne in determining whether Schnoor was malingering.  Like Dr. Ayyar's conclusions on the basis of Schnoor's cardiovascular health, Dr. Sonne's focus on Schnoor's cardiovascular health is a red herring in the context of a claim for CFS and FM disability.  Considered in light of Dr. Lapp's treatment notes since 1997, Dr. Lapp's repeated medical conclusion that Schnoor cannot physically work, and Schnoor's history of taking short-term disability due to CFS and FM, Dr. Sonne's articulated rationale is not supported by substantial evidence.  Moreover, the superficiality of Dr. Sonne's analysis is even more glaring in light of Dr. Lapp's reply letter to Sedgwick's first denial, which was in the record for Dr. Sonne's review and submitted with Schnoor's appeal.  (*See id.* at 806.)  Putting Dr. Sonne on notice, Dr. Lapp explains the fundamental error in Dr. Ayyar's analysis is that Schnoor's complaints of chronic fatigue are "not due to a heart condition but weakness and exhaustion after minimal every day activity; post exertional malaise that prostrates her for

14

days; muscle and joint pain," and other conditions. (*Id.*) Nonetheless, Dr. Sonne does not address those conditions in his proffered rationale.

Finally, Dr. Goldman reviewed Schnoor's medical records "from a psychiatric perspective." (*Id.* at 1689.) Dr. Goldman began his "assessment" section by stating:

> It is beyond the expertise of this reviewer to offer an opinion about issues in the context of cognitive dysfunction or cognitive complaints. From a strictly psychiatric perspective, however, the data does not support the presence of a globally or functionally impairing DSM affective or anxiety condition.

(*Id.* at 1692.) With that caveat, Goldman goes on to opine that Schnoor did not have a "functionally impairing mental condition" and was therefore not disabled as a result of a mental illness. The basis of Goldman's conclusion is the lack of "comprehensive diagnostic clinical Mental Health Assessments," mental health treatment notes, therapy notes, aggressive pharmacology or other evidence that Schnoor had been treated at "more intense levels of care such as a day program for a major mental condition." (*Id.*)

The basis of Schnoor's short-term disability claim is that she has a debilitating combination of symptoms resulting from CFS, FM, cognitive dysfunction, and other conditions. Specifically, Schnoor claims that she commits serious cognitive errors at work as a result of her cognitive dysfunction that make her dangerous to pharmacy patients. (*Id.* at 186.) Doctors Lapp and Wunsch have opined that there is a close relationship between Schnoor's intense fatigue, related pain, and resulting cognitive dysfunction, and she is a danger to patients. (*Id.* at 1046, 66.) However, Dr. Goldman's review only addresses the limited question of whether Schnoor has a global mental illness, such as a "DSM affective or anxiety condition." (*Id.* at 1692.) Dr. Goldman does not purport to assess the accuracy of Dr. Wunsch's neuropsychology opinion that Schnoor is disabled from her pharmacist job. As such, Dr. Wunsch's report is the *only relevant medical evidence* on the pertinent question—whether Schnoor's cognitive dysfunction renders Schnoor disabled. Even if Dr. Goldman had purported to offer an opinion about Schnoor's cognitive dysfunction, it would not follow from his reasoning (that Schnoor lacks a diagnosis of, or history of treatment for, a

15

global affective or anxiety condition) that Schnoor was not disabled by cognitive dysfunction.  Thus, Sedgwick's denial of Schnoor's appeal solely on record reviews by Doctors Sonne and Goldman was not supported by substantial evidence.

### C. Appropriate Remedy

Defendant argues that if the Court finds Sedgwick's denial of Schnoor's short-term disability benefits to be arbitrary and capricious, the appropriate remedy is to remand, presumably to Defendant, for further consideration.  Although the Sixth Circuit has held that remand to a plan administrator is appropriate "where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly denied," *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006) (internal quotation marks and alterations omitted), the Sixth Circuit has also held that "merely because our review must be deferential does not mean our review must also be inconsequential," *Kalish*, 419 F.3d at 513 ("While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." (internal quotation marks and citation omitted)).  Thus, if a court finds that the record supports that a claimant is entitled to benefits under a plan, remand is not required.  In this case, Sedgwick's reviewers failed to consider or arbitrarily dismissed evidence supporting Schnoor's CFS, FM, and cognitive dysfunction.  That evidence supports the conclusion that Schnoor was disabled because she was "prevented from performing one or more of the essential duties of [her] Walgreens occupation."  (*Id.* at 47.)

ERISA prescribes that a civil action may be brought by a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  In her Complaint, Schnoor alleges that Defendant wrongly denied her short-term disability benefits claim but also damaged her by effectively terminating her claim for long-term benefits.  (Docket no. 1, Page ID 9.)  In her prayer

16

for relief, Schnoor requests a declaratory judgment declaring that she is entitled to the group employee benefits as set forth in the Plan in effect at the time benefits became payable. Thus, Schnoor requests both the short-term and long-term benefits "due to [her] under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B).

Defendant responds that Schnoor has failed to exhaust her remedies for long-term benefits because she failed to accumulate 180 days of short-term disability benefits, a requisite for long-term disability benefit eligibility. Thus, Defendant argues that Schnoor is ineligible for long-term disability benefits. (Docket no. 21, Page ID 2533.)

The Sixth Circuit has "repeatedly held that exhaustion may be excused if the claimant establishes futility." *Welsh v. Wachovia Corp.*, 191 F. App'x 345, 356 (6th Cir. 2006) (*citing, e.g., Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718–19 (6th Cir. 2005); *Weiner v. Klais & Co.*, 108 F.3d 86, 90–91 (6th Cir. 1997)). A district court is "obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Id.* (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998)). In assessing futility, the court must decide "whether a clear and positive indication of futility can be made." *Fallick*, 162 F.3d at 419. To meet this standard, a plaintiff "must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Id.* (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)). "The futility doctrine is more easily applied in situations when the claimant has properly filed an application for benefits and initially been denied, but then fails to pursue an administrative appeal for whatever reason." *Welsh*, 191 F. App'x at 358. However, where a claimant was effectively precluded by the terms of the long-term disability plan from applying for long-term benefits, a claimant's "failure" to apply must be excused. *Id.*

In *Welsh v. Wachovia*, the Sixth Circuit vacated and remanded a district court order awarding long-term disability benefits on the basis that the parties agreed that the district court lacked a sufficient

17

administrative record from which to review the plan administrator's determination regarding long-term benefits. *Id.* Thus, the Sixth Circuit vacated and remanded with instructions that the plaintiff be afforded an opportunity to file a long-term benefits claim and pursue his administrative remedies prior to court review. *Id.* In remanding, the Sixth Circuit rejected the defendant's argument that the district court lacked jurisdiction to award long-term benefits, specifically noting that the Sixth Circuit, unlike the Second Circuit, "does not characterize the exhaustion requirement as 'jurisdictional' but instead holds the application of the doctrine is 'committed to the *sound discretion of the district court*.'" *Id.* at 358 n.5 (quoting *Fallick*, 162 F.3d at 418) (emphasis added).

In this case, Schnoor's efforts to apply for long-term benefits would have been futile: as shown above, Sedgwick certainly would have denied Schnoor's application on the ground that she had not "accumulated a total of 180 disability days during any consecutive 365 day period." (*Id.* at 47.) Thus, Schnoor is not barred from applying for long-term benefits.

Defendant also argues that the Court should remand the determination of long-term benefits on the merits. "[R]emand to the plan administrator is appropriate 'where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled.'" *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007) (quoting *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006)). However, in *Cooper v. Life Insurance Company of North America*, the Sixth Circuit held that where a claimant has "clearly established" that she is disabled under the applicable plan, remand is unnecessary. *Id.* Specifically, the Sixth Circuit noted that the plaintiff had introduced objective medical evidence of a disability from three treating physicians sufficient to support awarding long-term disability benefits. The court observed "[p]lan administrators should not be given two bites at the proverbial apple where the claimant is clearly entitled to disability benefits. They need to

18

properly and fairly evaluate the claim the first time around; otherwise they take the risk of not getting a second chance, except in cases where the adequacy of claimant's proof is reasonable debatable."[7]  *Id.* at 172.

Here, Schnoor has introduced sufficient evidence to establish long-term disability.  First, unlike in *Welsh*, Schnoor has submitted substantially more than 180 days of medical records evidencing an ongoing disability.  For instance, Dr. Lapp opined on August 30, 2011 that "it is medically certain that Ms. Schnoor will not improve significantly in 12 months and possibly never."  (Docket no. 13, Page ID 1082.)  Thus, there is a sufficient administrative record on which to determine whether Schnoor is entitled to long-term disability.  Second, the facts of this case are more akin to *Cooper*, 486 F.3d 157, in which the claimant produced substantial, objective evidence, rather than *Elliott*, 473 F.3d 613, or *Welsh*, 191 F. App'x 345, in which there was insufficient evidence from which to conclude that the claimant was disabled.  Finally, Defendant does not argue that Schnoor would otherwise be ineligible for long-term benefits.[8]

## III. CONCLUSION

For the foregoing reasons, the Court will enter judgment on the administrative record in favor of Schnoor for purposes of both short-term and long-term disability benefits.

An order consistent with this Opinion will be entered.


Dated:  August 14, 2013                                      /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                                  UNITED STATES DISTRICT JUDGE

---

[7] Although *Cooper* is factually distinguishable because Cooper applied for long-term disability benefits before filing her lawsuit and Schnoor did not, the distinction is immaterial because Defendants' arbitrary and capricious denial of short-term benefits is the reason that Schnoor had not yet applied for long-term benefits.

[8] For long-term disability benefits, the Plan defines "own occupation" as the activity that a Plan participant regularly performs and that serves as her source of income.  It is not limited to the specific position that she holds or held with Walgreens but may be a similar activity that could be performed with Walgreens or any other employer. (*Id.* at 48.) Defendant does not argue that Schnoor is otherwise *ineligible* for long-term disability benefits and the Court finds the evidence in the administrative record supports a finding of long-term disability.